**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK R. HOUSE, JR.,** | : | |
| Petitioner | : | **CIVIL ACTION NO. 4:04-CV-2452** |
| v. | : | |
| **SUPERINTENDENT PALAKOVICH and ATTORNEY GENERAL OF PENNSYLVANIA,** | : | **(MCCLURE, D.J.)** **(MANNION, M.J.)** |
| Respondents | : | |

# REPORT AND RECOMMENDATION

Frederick R. House, an inmate presently in the custody of the Pennsylvania Department of Corrections at SCI-Smithfield, Pennsylvania, ("SCI-Smithfield") filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on November 10, 2004. (Doc. No. 1). The petitioner challenges his conviction in the Bradford County Court of Common Pleas.

A show cause order issued on November 23, 2004. (Doc. No. 7). After being granted an extension of time in which to do so, the respondents filed a response to the petition on January 29, 2005. (Doc. No. 12). The respondents filed a supplement to the response on February 8, 2005. (Doc. No. 13). The petitioner did not file a reply to the response.

## I. BACKGROUND

The petitioner states that in August 2001, several Pennsylvania State

Troopers questioned him regarding the disappearance of a neighbor, Edward William Bond.  The petitioner states that he was told by the troopers that he was being questioned because it was believed that Bond was last seen with the petitioner. The petitioner states further that certain items of personal property were seized from his home at that time without a search warrant.

The respondents added the following information. On the evening of August 8, 2001, the petitioner went to Bond's residence in West Burlington Twp., Bradford County, Pennsylvania.  Once on the premises, he shot the victim four times with a .22 caliber revolver.  The petitioner then proceeded to dispose of Bond's body.  He loaded Mr. Bond into the bed of the victim's green extended cab Dodge pickup truck.  He drove to a heavily wooded area of Barclay Mountain in Bradford County where he disposed of Bond's body under a fallen tree, placing twigs and branches over and around the body helping to conceal it. The petitioner kept the victim's Dodge truck and drove it around until he wrecked it in a one vehicle accident in Norwich, N.Y. on August 10, 2001.

On August 12, 2001, the petitioner's father, with whom the petitioner lived, gave a Pennsylvania State Trooper permission to search his house. Among the items found was a .22 caliber revolver located in the bottom

drawer of a gun cabinet in the living room of the house.  The gun was determined to be the murder weapon with the blood of both the victim and the petitioner on it.

On August 12, 2001, the petitioner was charged with criminal homicide, burglary, theft by unlawful taking, and other related charges. The chief public defender for Bradford County was appointed as trial counsel.  Counsel filed Omnibus Pretrial Motions which included 11 separate requests for relief, including but not limited to, a motion for change of venue, motion to bar imposition of the death penalty, motion to suppress inculpatory statements, and a motion to suppress evidence seized from the petitioner's bedroom.  She also arranged to have the petitioner undergo a psychiatric evaluation.

A preliminary hearing took place on January 15, 2002. The petitioner entered a plea of not guilty.  The Commonwealth filed a notice of Aggravating Circumstances, placing the petitioner on notice that the Commonwealth intended to seek the death penalty in the event that the petitioner was convicted of Murder in the First Degree.

On June 18, 2002, the petitioner entered a plea of guilty, but mentally ill, to one count of Murder in the First Degree.  The rest of the charges were dropped.  He was sentenced on August 20, 2002, to life without the possibility of parole.  The petitioner maintains that he wished to file a direct

appeal, but that assigned counsel failed to do so.

On June 3, 2003, the petitioner filed a *pro se* Post Conviction Relief Act Petition ("PCRA"). He raised only two issues: ineffective assistance of counsel and unlawful inducement of guilty plea. He was appointed PCRA counsel by the court.

After reviewing various documents, and extensive interviews with trial counsel, PCRA counsel filed a "no merit" letter with the PCRA court on August 22, 2003. After taking the no merit letter under consideration, the PCRA Court denied and dismissed the PCRA petition on October 6, 2003. PCRA counsel filed a protective appeal from the denial of PCRA relief, on behalf of the petitioner, with the Pennsylvania Superior Court on October 29, 2003. PCRA counsel also filed a motion to withdraw as counsel, which was granted by the PCRA Court on November 5, 2003. (*See, generally* Doc. No. 13, annexed exhibits).

By order dated January 5, 2004, the Superior Court of Pennsylvania also granted PCRA counsel's motion to withdraw and directed the petitioner to file a brief in support of the PCRA appeal no later than February 11, 2004. The petitioner never filed a brief. On March 29, 2004, the Superior Court dismissed the appeal for failure to file a brief. (Doc. No. 13, Exhibits 1,2,3,4). No further action was taken by the petitioner.

## II. <u>STANDARD OF REVIEW</u>

In reviewing a habeas corpus petition brought pursuant to 28 U.S.C. §2254 this court must give considerable deference to the determinations of state courts. Section 2254(d) states, in pertinent part, that federal habeas corpus relief is precluded where the claim was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(28 U.S.C §2254(d)). The United States Supreme Court stated in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-413. "A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on

5

factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Moreover, a factual determination of a factual issue made by a state court shall be presumed to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence. Alexander v. Shannon, 2005 WL 121930 (E.D. Pa. 2005); 28 U.S.C. §2254(e)(1). The court will apply these standards in reviewing the petitioner's claims.

### III.    **DISCUSSION**

The petitioner raises four claims in his habeas corpus petition: (1) that he was denied his Miranda rights; (2) that the search of his residence was illegal; (3) that he was denied the right to counsel, and (4) ineffective assistance of counsel.  The ineffective assistance of counsel claim contains 7 subclaims of error, including deficiency of performance; failure to thoroughly investigate the case and possible defenses; failure to adequately prepare for trial; insufficient basis for mental health determination; failure to preserve meritorious issues for appellate review; failure to present available evidence, and unlawful inducement of guilty plea.

The respondents reply that the petition should be dismissed because the petitioner has failed to exhaust available state court remedies.  In the

alternative, the respondents assert that no violation of the petitioner's Miranda rights occurred; that no illegal search of the petitioner's property occurred because his father had given the investigating officers permission to enter the premises; that it is evident that the petitioner did have counsel, and that there was no ineffective assistance of counsel.

The petitioner brought this habeas corpus petition pursuant to 28 U.S.C. §2254. A state inmate must exhaust all available state remedies prior to filing a petition for writ of habeas corpus in federal court. Barnhart v. Kyler, 318 F. Supp.2d 250 (M.D.Pa. 2004)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); 28 U.S.C. §2254(b)and(c). When an inmate completes one full round of the state's standard review process, the claim is considered exhausted, even if alternative channels of review exist. O'Sullivan, 526 U.S. at 844-45).  Exhaustion does not require that the claim actually be adjudicated by the state's highest court; it mandates only that the claim be presented. Barnhart, 318 F.Supp.2d at 256 (citing Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984). The claim, however, must be "fairly presented" to the state courts, which means that "both the legal theory and the facts underpinning the federal claim must have been presented to the state courts...and the same method of legal analysis must be available to the state courts as will be employed in the federal court." Blasi v. Attorney

General of the Commonwealth of Pennsylvania, 30 F.Supp.2d 481, 486 (M.D. Pa. 1998).

The Third Circuit has held that exhaustion is not a jurisdictional requirement, but a matter of comity. *See* Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994). The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally secured rights. Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992).

Where state procedural rules bar a petitioner from seeking further relief in the state courts, "the exhaustion requirement is satisfied because there is an absence of available State corrective process, 28 U.S.C. §2254(b)." McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). This does not mean, however, that the federal courts can, without more, determine the merits of the petition. If a petitioner is procedurally barred from bringing his claims in state court, he must establish "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

In order to establish "cause", the Supreme Court has stated that a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478 (1986). For instance, the Court noted that

where a factual or legal basis for a claim was not reasonably available to counsel or where interference by government officials made compliance impracticable, "cause" for the procedural default would be established. Id. If an inmate cannot establish cause and prejudice, his claim will not be decided on the merits in a habeas proceedings unless he demonstrates that the failure to do so would constitute a fundamental miscarriage of justice. Bell v. Varner, 2001 WL 1021135 * 8 (E.D. Pa. 2001)(citing Werts v. Vaughn, 228 F.3d 178, 193 (3d. Cir. 2000).

The petitioner's first claim is that he was denied his rights under Miranda v. Arizona, 384 U.S. 426 (1966).  He maintains that at some point while being questioned by the State Troopers he told them that he suffered from a bi-polar disorder, and that at that point the interrogation should have ceased. (Doc. No. 2. pp. 7-8). There is no indication in the record that the petitioner ever sought state court review of this claim by way of either direct appeal or in the PCRA petition.[1]  Neither does the petitioner offer any explanation as to why the failure to seek state court review of this claim

---

[1]It is noted that prior to the tender of the petitioner's guilty plea, counsel had filed a motion to suppress inculpatory statements partially on the basis of an alleged Miranda violation, however, the court never had to rule on that motion because the petitioner chose to enter a plae of guilty before a decision was handed down.

9

should be excused.  As a result, this claim should be dismissed.

The petitioner's next claim is that his residence was searched without a search warrant. There is no indication in the record that the petitioner ever sought state court review of this claim by way of either direct appeal or in his PCRA petition.[2]  Neither does the petitioner offer any explanation as to why the failure to seek state court review of this claim should be excused.  As a result, this claim should be dismissed.

The petitioner's next claim is that he did not have counsel.  Even a cursory review of the record reveals this claim to be patently untrue. Furthermore, the petitioner did not raise this claim in his PCRA petition, or in any other fashion seek state court review of this claim.  Neither does the petitioner offer any explanation as to why the failure to seek state court review of this claim should be excused.  As a result, this claim should be dismissed.

The petitioner's next claim is that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. As noted above, the petitioner lists 7 claims of error, including

---

[2]Similarly, it is noted that prior to the tender of the petitioner's guilty plea, counsel had filed a motion to suppress evidence seized from the petitioner's bedroom on the basis of an alleged Fourth Amendment violation, however, as noted before, the court never had to rule on that motion because the petitioner chose to enter a plea of guilty, before a decision was handed down.

deficiency of performance; failure to thoroughly investigate the case and possible defenses; failure to adequately prepare for trial; insufficient basis for mental health determination; failure to preserve meritorious issues for appellate review; failure to present available evidence, and unlawful inducement of guilty plea.

The petitioner has failed to exhaust these claims. As noted above, at the same time PCRA counsel was granted permission to withdraw as counsel, the petitioner was directed to file his appellate brief in support of the PCRA denial. The petitioner never did so, and as a result, the appeal, and the attendant claims, were never exhausted. The petitioner has offered no explanation for his failure to file a brief, nor has he put forth any reason why his failure to do so should be excused. Because the petitioner has not exhausted these claims, they should be dismissed.

In an abundance of caution, however, this court has carefully reviewed PCRA counsel's no merit letter brief. In that brief, PCRA counsel concluded:

> After careful consideration of the case material, I have concluded that the issues raised by the Petitioner in his P.C.R.A. Petition have no merit and that after examining the P.C.R.A. Act and the material, I have found that there is no issue available to Petitioner, so as to amend his petition and pursue another course by way of an amended petition.

11

>This brief is made pursuant to the cases known as <u>Commonwealth v. Turner</u>, 544 A.2d 927 (1988) and <u>Commonwealth v. Finley</u>, 479 A.2d 568 (1984) which hold that if counsel finds the P.C.R.A. Petition to be meritless the P.C.R.A. attorney may inform the Court of this and be allowed to withdraw.
>
>It should also be noted that [PCRA counsel] has written the Petitioner to ask his input on the Petition but he has not heard back from the petitioner.

(Doc. No. 13. Exhibit 12).

PCRA counsel noted that the petitioner was represented by trial counsel at his preliminary hearing his plea and his sentencing. PCRA counsel stated in his no-merit letter that he had met with the petitioner's trial counsel, and that she explained to him that she had thoroughly researched the possibility of an insanity defense. She stated that in her first conversations with the petitioner he refused to cooperate with her and remained silent. She obtained a report from Pogos H. Voskanian, M.D., who had undertaken a comprehensive mental evaluation of the petitioner. Trial counsel stated that Dr. Voskanian's report demonstrated that there existed the possibility for a guilty but mentally ill plea, but that there was no basis for a legal insanity defense.

Trial counsel explained further that she researched areas of the law concerning homicide defenses, including voluntary intoxication and legal insanity. She stated that the petitioner told her that although he had

consumed 15 beers on the day in question, he still believed that he was capable of driving the truck. As a result, trial counsel concluded that voluntary intoxication, as a mitigating factor, was not a viable option. As noted, the report of Dr. Voskanian did not support an insanity defense.

PCRA counsel also stated that trial counsel explained to him that she considered that others had been involved in the crime, but that the petitioner refused to offer any kind of information which would implicate anyone else in the crime. As a result, trial counsel felt constrained by the petitioner's refusal to cooperate in the investigation to suggest to him that he consider a plea agreement. She told PCRA counsel that she had explained her conclusions to the petitioner.

PCRA counsel advised the court that he believed that the ineffective assistance of counsel claim had no merit because:

> To prevail on a claim of ineffective assistance of counsel under 42 Pa. C.S.A. §9543(a)(2)(ii), the petitioner must plead and prove:
>
> 1. The underlying claim is of arguable merit;
>
> 2. Counsel's performance was unreasonable;
>
> 3. There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, that is, that no reliable adjudication of guilt or innocence could have taken place. Commonwealth v. Kimball, 724 A.2d

326 (1999).

Under federal law, a petitioner must meet a two prong test in order to prevail on a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Applying this standard, it appears that there was no error in PCRA counsel's conclusion that the petitioner could not have prevailed on an ineffective assistance of counsel claim, and the PCRA court did not err in dismissing the claim.

PCRA counsel also concluded that the petitioner's claim that his guilty plea was unlawfully induced had no merit. He stated:

> Under the 1995 Amendment to Section 9543(a)(2)(iii), a claim that a plea of guilty was unlawfully induced requires that the Petitioner plea and prove that the Petitioner's conviction or sentence must have resulted from a plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the Petitioner to plead guilty and the petitioner is innocent. <u>Commonwealth v. Laszcynsksi</u>, 715 A.2d 1185 (1998).

14

PCRA counsel noted that the petitioner never asserted his innocence. Rather, it was the petitioner who informed trial counsel that he wanted to plead guilty. The petitioner signed a plea agreement in which he advised the court that no one had threatened him to plead guilty and at the plea colloquy he stated:

> The Court: All right. Okay. Mr. House, did you discuss with your attorney whether or not you should tender this guilty but mentally ill?
>
> Mr. House: Yes.
>
> The Court: And since that's what you are here doing, I assume that's what you decided to do after that discussion with her. Is that correct?
>
> Mr. House: That's correct.
>
> The Court: And why did you decide to do that?
>
> Mr. House: Because I feel that's what I am.
>
> The Court: Pardon me.
>
> Mr. House: I feel that's what I am.
>
> The Court: All right. You feel that that's the correct outcome for the case.
>
> Mr. House: Right.

15

As PCRA counsel noted, the Court gave the petitioner every opportunity to state that he was innocent, or that he was forced into pleading guilty, but the petitioner did neither.

Under federal law, an inmate may not ordinarily repudiate statements made to the sentencing judge. Blackledge v. Allison, 431 U.S. 63 (1977)(noting a defendant's "declarations in open court carry a strong presumption of verity."). Additionally, due process does not require an on-the-record development of the factual basis supporting a guilty plea. Meyers v. Gillis, 93 F.3d 1147, 1148 (3d Cir. 1996). Even so, the record in this case clearly supports PCRA counsel's no-merit opinion that a factual basis was established for the entry of the guilty plea. The petitioner's colloquy was sufficiently detailed so as to be binding upon him. *See* D'Agostino v. Tennis, 2005 WL 1459334 * 3 (E.D.Pa.). Applying the standard of review set forth in Willams v. Taylor, *supra*, it appears that the PCRA Court's decision, not to consider the merits of this claim, is not contrary to, nor an unreasonable application of, clearly established federal law. As a result, this claim should be dismissed.

## IV.   RECOMMENDATION

On the basis of the foregoing, **IT IS HEREBY RECOMMENDED THAT**

the Petition for Habeas Corpus (Doc. No. 1) be **DISMISSED.**

                                                  S/ Malachy E. Mannion
                                                  **MALACHY E. MANNION**
                                                  United States Magistrate Judge

Dated: November 16, 2005

C:\WINDOWS\TEMP\notesC7A056\04-2452.01.wpd